IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| PJ Sloat, through her next friend, Pamela Loudon; Harry Stokes as Legal Guardian for AS; and Disability Rights South Carolina,<br><br>Plaintiffs,<br><br>vs.<br><br>Active Day, Inc.,<br><br>Defendant. | Civil Action No.:<br>3:23-cv-1518-SAL<br><br>**VERIFIED COMPLAINT** |

Plaintiff PJ Sloat, through her next friend, Pamela Loudon ("PJ"), and Plaintiff AS, through Harry Stokes her legal guardian, and Plaintiff Disability Rights South Carolina ("DRSC"), by and through their attorneys, bring their Complaint against Defendant Active Day, Inc. and state as follows:

**INTRODUCTION**

1. Plaintiffs PJ and AS are adult SSA beneficiaries who are on the Intellectual Disabilities and Related Disabilities Medicaid Home and Community-Based Waiver (ID/RD waiver). A waiver is a Medicaid program providing services in community settings so that individuals can avoid going into nursing homes or intermediate care facilities for those with intellectual or related disabilities (ICF/IID). ICF/IID are similar to nursing homes but are designed for those with Intellectual Disabilities/Related Disabilities [ID/RD].

2. Plaintiffs PJ and AS are receiving day program services from Defendant Active Day, a private Medicaid-approved provider. Adult Day Care or Adult Day Health Care Programs

include 5 hours a day of comprehensive care, including nursing supervision and personal assistance, recreational activities, a hot meal, a snack, and transportation door-to-door.

3. Plaintiff PJ has no legal guardian. Harry Stokes is the legal guardian for AS.

4. In March 2023, Defendant demanded Plaintiffs PJ and AS sign a binding arbitration agreement in order to keep receiving services from Defendant. Plaintiff were told they would lose services if they did not sign the arbitration agreement. Plaintiffs have been long time recipients of services of Active Day.

5. Plaintiffs seek a declaration from the Court that Defendant's arbitration agreement (**Exhibit A**) is unconscionable and unenforceable and an injunction prohibiting Defendant from attempting to enforce the agreement. Additionally, Plaintiffs PJ and AS seek damages from Defendant's violation of the South Carolina Unfair Trade Practice Act ("UTPA").

**PARTIES**

6. Plaintiff PJ is a 20-year old woman who lives at home with her mother in Charleston, South Carolina. She was diagnosed with Cerebral Palsy (CP) and Intellectual Disability at age nine months. PJ is quadriplegic, legally blind, incontinent and has significant hearing loss and a gastrostomy tube (G-Tube). PJ's mother has been her primary caregiver. PJ has been on the Intellectual Disability/Related Disabilities Waiver (ID/RD) since age three. She attends an Adult Day program run by Defendant where she receives nursing services. Transportation to the program is also provided. PJ's mother takes care of her if she is not at the day program so her mother loses work time and time for errands or other tasks. Plaintiff PJ is a citizen and resident of Charleston County, South Carolina.

7. Plaintiff AS is a 40 year-old woman with cerebral palsy and quadriplegia. She is legally blind. Her father is her legal guardian. Plaintiff AS has been attending Hope Bridge Day

Center since she was 18. She is on the ID/RD waiver. Plaintiff AS is a citizen and resident of Lexington County, South Carolina.

8. Plaintiff Disability Rights South Carolina, Inc. (DRSC) is a South Carolina nonprofit corporation with principal offices in Richland County, South Carolina. DRSC is South Carolina's Protection and Advocacy system ("P&A"), as that term is defined under the Developmental Disabilities Assistance and Bill of Rights Act ("DD Act"), 42 U.S.C. § 15041, *et. seq.*; the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. § 10801, *et. seq.*; and the Protection and Advocacy of Individual Rights Act ("PAIR Act"), 29 U.S.C. § 794e, *et. seq.* The DD Act authorizes P&A systems to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of individuals with disabilities. *See* 42 U.S.C. § 15043(a)(2)(A)(i).

9. DRSC operates to protect and advance the legal, civil, and human rights of people with disabilities in South Carolina. Several individuals have approached DRSC seeking help from DRSC regarding the Draconian arbitration agreement that Active Day is forcing on its customers. These individuals fear being named plaintiffs in this action due to the retaliatory actions that Active Day may cause the individuals to experience. This threat is real as Active Day has informed the individuals that Active Day will discontinue all services provided to these individuals and others if they do not sign the arbitration provision. These individuals also fear that Active Day will inform other centers that these individuals were not cooperative, and therefore, other centers should not accept these individuals as clients.

10. Defendant Active Day is a provider of Adult Day services for seniors and adults with developmental disabilities. According to their website, they are the largest network of owned and operated centers for adult day services. Upon information and belief, Defendant is

headquartered in Pennsylvania and has more than 100 centers in 10 states, providing services to more than 8,000 people.

11. Defendant Active Day is a corporation organized under the laws of the State of Delaware, with its principal place of business in Pennsylvania, and is doing business in the State of South Carolina, including locations in Richland County, among other places in the Midlands and throughout the State of South Carolina.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction arising under 28 U.S.C. § 1332 over the claims in this lawsuit because the parties are citizens of different states and the value of the matter in controversy exceeds the sum of $75,000.00 and Plaintiffs seek injunctive and declarative relief.

13. This Court has personal jurisdiction because Defendant transacts business in the State of South Carolina.

14. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims brought by Plaintiffs have occurred in Richland County, Lexington County among other counties located in the Midlands which is in the Columbia Division of the District of South Carolina.

## FACTS

15. Plaintiff PJ receives day program services through South Carolina's Medicaid program. In 2021, Plaintiff received services at Club Horizons, Defendant Active Day's site in North Charleston. She currently receives services from Defendant at a West Ashley location.

4

16. On or about Thursday, March 23, 2023, Defendant sent Plaintiff PJ's mother a copy of a Binding Arbitration Agreement (**Exhibit A**). Defendant told her Plaintiff would not be able to attend the program if she did not sign and return the agreement.

17. Plaintiff AS also receives day program services through the state Medicaid program. AS, who will soon be 40 years old has been attending the Hope Bridge Day Program since she was 18 years old. Active Day acquired Hope Bridge a few years ago.

18. In March, 2023, Defendant told Harry Stokes, guardian for Plaintiff AS, that they needed to sign the binding arbitration agreement (Exhibit A) presented by Defendant or lose services.

19. Other clients of DRSC have received the same proposed Binding Arbitration Agreement and been told they would be kicked out of the Active Day center if they did not sign the Binding Arbitration Agreement by March 17, 2023. (See attached letter from Active Day to DRSC's clients, attached hereto and incorporated herein as **Exhibit B**.)

20. Plaintiff PJ's mother signed the agreement and sent it to Defendant on or about March 31, 2023, so that Plaintiff PJ could continue to receive services. Plaintiff's mother felt she had no choice but to sign the agreement.

21. Plaintiff AS's guardian signed the agreement and sent it to Defendant on or about March 30, 2023, so that Plaintiff AS could continue to receive services. Plaintiff AS's guardian felt he had no choice but to sign the agreement.

22. Courts have long recognized that unconscionable arbitration agreements are not enforceable. South Carolina defines unconscionability as "the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so

oppressive that no reasonable person would make them, and no fair and honest person would accept them. *Simpson v. MSA of Myrtle Beach, Inc.,* 373 S.C. 14  644 S.E.2d 663 (2007).

23. Defendant's arbitration agreement is unconscionable. First, Defendant is using duress to get clients and their families to sign the agreement. Defendant coerced Plaintiffs into signing the agreement by threatening to terminate their services unless they sign it. The absence of meaningful choice on the part of one party generally speaks to the fundamental fairness of the bargaining process. *Simpson*, 644 S.E.2d at 669. Plaintiffs are adults with developmental disabilities who rely upon the day program services of Defendant. Defendant is a corporation with over 100 locations in 10 states. Due to her specific needs, Plaintiff PJ will not have day services if she cannot get them from Defendant. Plaintiff AS will also lose her services if she cannot get them from Defendant. Defendant also demanded Plaintiffs sign and return the agreement within a very short time.

24. Second, Defendant's arbitration agreement is very one-sided. Defendant's agreement protects Defendant from any and all claims related to their services whether for statutory, compensatory, punitive, or any other type of damages. (Exhibit A, Paragraph (a)) Plaintiffs are receiving the day program services under the ID/RD HCBS waiver, part of South Carolina's Medicaid program. However, the broad language in paragraph (a) of Defendant's agreement could prohibit Plaintiffs from filing a Medicaid appeal over issues with Defendant's services. Regardless, Defendant's agreement requires all claims be submitted for arbitration.

15. Third, while Plaintiffs live and receive services in South Carolina, Defendant's agreement requires arbitration in Pennsylvania where the company is headquartered. (Exhibit A, Paragraph (f).) If a trial or court proceeding is demanded, the agreement also requires all litigation occur in Pennsylvania. (Exhibit A, Paragraph (r).)

16. Notably, the Binding Arbitration Agreement contains the following offensive provisions:

   a. Refusal to sign the Binding Arbitration Agreement results in the cancelation of the underlying agreement which results in the client being kicked out of the center by Active Day (Ex. A. ¶ k);

   b. Expansion of the beneficiaries of the Binding Arbitration Agreement (*id.* ¶ b);

   c. Attempts to shorten the applicable statute of limitations to two years and dispenses with the discovery rule applicable in South Carolina (*id.*(e));

   d. Allocates unfairly the fees and costs associated with arbitration (*id.*(i));

   e. Imposes a confidentiality clause that is unfair and against public policy as it precludes the client or a related person from communicating with federal, state, or local officials (*id.* ¶ l);

   f. Creates third-party beneficiary status (*id.* ¶ q);

   g. Requires a bench trial in Bucks County, Pennsylvania (should the arbitration provision be found unenforceable) with the knowledge that the clients are intellectually disabled, which is often accompanied by severe physical disabilities (*id.* ¶ r);

   h. Provides that the arbitrator "shall resolve **all** claims, disputes and controversies" cutting off clients' ability to seek injunctive relief (*id.* ¶ g (emphasis in original));

   i. Provides that clients have only fifteen days to cancel the arbitration and states that this 15-day window is a "sufficient opportunity" to seek counsel and have him/her opine on Binding Arbitration Agreement, knowing that fifteen days is

hardly sufficient time to find counsel and have an opinion on the Binding Arbitration Agreement (*id.* ¶¶ k, s.)

17. Plaintiffs PJ, AS and their families and DRSC's clients rely upon the day program services provided by Defendant. If they cannot get their services, Plaintiffs will lose the opportunity for socialization with their peers, receive daily nursing services, to engage in necessary therapies, and other services they receive from Defendant. Their parents' lives are also impacted since they will lose work time, time for respite from caring for Plaintiffs, or time they use to perform errands or other tasks during the time their children are at the day program. Additionally, Defendant is the only suitable provider for Plaintiffs in the area due to Plaintiff's service needs.

18. Without the Court's intervention Plaintiffs are faced with no meaningful choice about whether to sign an agreement with one-sided contract provisions and terms that are so oppressive that no reasonable person would make them, and no fair and honest person would accept them. Accordingly, Plaintiffs bring this action seeking declarative and injunctive relief, along with claims for damages, against Defendant.

## **FIRST CAUSE OF ACTION**
**(Temporary Restraining Order and Injunction)**

19. Plaintiffs repeat and reallege the allegations in the previous paragraphs of the Complaint as if fully alleged herein.

20. Defendant is imposing an unenforceable and unconscionable arbitration agreement on intellectually disabled individuals as a condition to be able to stay at Defendant's centers. This is true even when Plaintiffs PJ, AS, and others have been attending and relying on Defendant's centers for over two and a half years.

21. Moreover, Defendant's actions are wrongfully depriving Plaintiffs PJ, AS, and DRSC's clients of their Medicaid benefits.

22. The Binding Arbitration Agreement violates public policy, and therefore, is unenforceable.

23. This Court should grant a Temporary Restraining Order and then an Injunction temporarily enjoining Defendant Active Day from (1) imposing the Binding Arbitration Agreement on Plaintiff PJ, Plaintiff AS or any other recipient of services in South Carolina, (2) canceling the underlying agreement allowing Plaintiffs PJ, AS and others to receive services from Active Day, (3) removing services from Plaintiffs PJ, AS and others for refusing to sign the Binding Arbitration Agreement or cancelling it.

24. In addition, the Court should grant Plaintiffs an injunction maintaining the status quo until these matters can be resolved or determined by the Court. A temporary restraining order is necessary to preserve the status quo, to prevent the irreparable injury to Plaintiffs and others receiving services in South Carolina from Defendant Active Day that will result if Active Day is allowed to proceed with its Draconian and illegal Binding Arbitration Agreement, and to allow the Court to render effective relief if the Plaintiffs prevail at trial. Plaintiffs would have no adequate remedy at law, and this Court's ability to fashion effective relief would be significantly impaired if the proposed Binding Arbitration Agreement is found to be unlawful.

25. Any harm to Defendant Active Day would be greatly outweighed by the harm suffered by Plaintiffs and others who receive services from Defendant if they are kicked out of Active Day's centers.

26. Therefore, this Court should grant a Temporary Restraining Order, Preliminary Injunction, and then a Final Injunction enjoining Active Day from (1) imposing the Binding Arbitration Agreement on Plaintiffs PJ, AS or any other recipient of services in South Carolina, (2) canceling the underlying agreement allowing Plaintiffs PJ, AS and others to receive services

from Active Day, (3) removing services from Plaintiffs PJ, AS and others for refusing to sign the Binding Arbitration Agreement or cancelling it.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment)

27. Plaintiffs repeat and reallege the allegations in previous paragraphs of the Complaint as if fully alleged herein.

28. By threatening to withhold Plaintiffs' Medicaid services, Defendant coerced Plaintiffs' family and legal guardian and DRSC's clients into signing the binding arbitration agreement attached as Exhibit A. This agreement is an unfair contract that, amongst other things, requires arbitration of any and all claims against Defendant, that such arbitration occur in Pennsylvania, and that any litigation connected with the agreement also take place in Pennsylvania.

29. Additionally, the Binding Arbitration Agreement lacks consideration, and therefore, is unenforceable.

30. Additionally, the Binding Arbitration Agreement was procured under duress as it was secured by improper external pressure or influence that practically destroys the free agency of Plaintiffs and causes them to do an act or form a contract not of their own volition. Therefore, the Binding Arbitration Agreement is unenforceable.

31. Additionally, the Binding Arbitration Agreement violates public policy, and therefore, is unenforceable.

32. The Court should declare Defendant's arbitration agreement unconscionable and unenforceable and issue an order prohibiting Defendant from attempting to enforce the agreement against Plaintiffs or any other recipient of services in South Carolina.

## THIRD CAUSE OF ACTION
### (Violations of the South Carolina Unfair Trade Practices Act)

33. Plaintiffs repeat and reallege the allegations in previous paragraphs of the Complaint as if fully alleged herein.

34. The methods, acts, and practices alleged hereinabove are unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce and are unlawful pursuant to the South Carolina Unfair Trade Practices Act ("SCUTPA").

35. Plaintiffs have suffered actual damages and an ascertainable loss of money, as a result of the use or employment by Active Day of an unfair or deceptive method, act, or practice declared unlawful by S.C. Code § 39-5-20. The use or employment of the unfair or deceptive method, act, or practice was a willful or knowing violation of § 39-5-20.

36. The unlawful trade practice engaged in by the Defendant has an adverse impact on the public and/or is capable of repetition and was in fact repeated.

37. Plaintiffs are entitled to their actual damages sustained and treble damages under the SCUTPA, plus reasonable attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, the PLAINTIFFS respectfully request this Court to:

1. Issue a temporary restraining order enjoining the Defendant from demanding other South Carolinians sign the agreement and from enforcing the order against those who have already signed it;

2. Preliminarily and permanently enjoin Defendant from enforcing the arbitration agreement in South Carolina;

3. Declare the Binding Arbitration Agreement of the Defendant unconscionable;

4. Declare the Binding Arbitration Agreement of the Defendant unenforceable;

11

5. Award Plaintiffs actual, treble, and punitive damages in connection with Active Day's violations of the South Carolina Unfair Trade Practices Act;

6. Award Plaintiffs attorney's fees, costs and expenses incurred in this matter; and

7. Provide any such further relief as the Court deems just and equitable.

                                  **SOWELL & DuRANT, LLC**

By:    s/Bess J. DuRant
           Thornwell F. Sowell III, SC Bar No. 5197
           Bess J. DuRant, SC Bar No. 77920
           1325 Park Street Suite 100
           Columbia, South Carolina 29201
           (803) 722-1100
           bsowell@sowelldurant.com
           bdurant@sowelldurant.com

           Randall Dong, Fed ID # 5989
           Anna Maria Conner, Fed ID # 5532
           DISABILITY RIGHTS SOUTH CAROLINA
           3710 Landmark Drive
           Suite 208
           Columbia, SC 29204
           Conner@disabilityrightssc.org
           Dong@disabilityrightssc.org

           *Attorneys for Plaintiffs*

Columbia, South Carolina
April 13, 2023

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | |
|---|---|
| PJ Sloat, through her next friend, Pamela Loudon; Harry Stokes as Legal Guardian for AS; and Disability Rights South Carolina,<br><br>        Plaintiffs,<br><br>vs.<br><br>Active Day, Inc.,<br><br>        Defendant. | Civil Action No.:<br><br>**VERIFICATION OF**<br>**PAMELA LOUDON** |

Personally appeared before me, Pamela Loudon, who duly sworn, deposes and says that she is one of the Plaintiffs in the foregoing action; that she has read the foregoing Verified Complaint and states it is true to the best of her present knowledge, information and belief.

_____
Pamela Loudon

Sworn to me this 13 day
of April, 2023.

_____
Printed Name: Nathan Ouellette
My Commission Expires: 7-29-31
Notary Public for South Carolina



IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| PJ Sloat, through her next friend, Pamela Loudon; Harry Stokes as Legal Guardian for AS; and Disability Rights South Carolina,<br><br>Plaintiffs,<br><br>vs.<br><br>Active Day, Inc.,<br><br>Defendant. | Civil Action No.:<br><br>**VERIFICATION OF HARRY STOKES** |

Personally appeared before me, Harry Stokes, who duly sworn, deposes and says that he is one of the Plaintiffs in the foregoing action; that he has read the foregoing Verified Complaint and states it is true to the best of his present knowledge, information and belief.

_____
Harry Stokes

Sworn to me this 13th day
of April, 2023.

_____
Printed Name: Amy A Kelly
My Commission Expires: May 27 2026
Notary Public for South Carolina